UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMAR OCAMPO SANCHEZ,<br>Petitioner,<br>v.<br>WARDEN, NORTHWEST ICE PROCESSING CENTER et al.,<br>Respondents. | CASE NO. 2:26-cv-03500-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Omar Ocampo Sanchez's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons explained below, the Court grants the petition in part and denies it in part.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States without inspection around 2002. Dkt. No. 6 at 2. On September 4, 2012, he was arrested in Auburn, Washington, and three days later he "was convicted in the Auburn Municipal Court of driving under the influence, a violation of [Washington Revised Code Section] 46.61.502(5), and sentenced to serve 364 days in jail, three years suspended, and driving with a license suspended or

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

revoked, a violation of [Washington Revised Code Section] 46.20.342(1)(C), and sentenced to twenty-four months suspended." *Id.* Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") encountered Petitioner while in state custody, obtained a warrant for his arrest, and issued him a Notice to Appear ("NTA") "charging him as removable from the United States under [Immigration and Nationality Act] § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(a)(i)[.]" *Id.* ERO scheduled removal proceedings; on October 31, 2012, an Immigration Judge ("IJ") "granted Petitioner release from immigration custody under a bond of $5,000." *Id.* Petitioner posted the bond on November 20, 2012, and was released from immigration custody. *Id.*

On February 5, 2013, "Petitioner was arrested by the Washington State Patrol for driving under the influence" in violation of Section 46.61.502(5) of the Washington Revised Code. *Id.* at 3. The record does not make clear whether he was convicted of the offense. On May 23, 2013, Petitioner filed an "application for asylum and withholding of removal" and an "application for cancellation of removal and adjustment of status[.]" *Id.* On July 9, 2013, he submitted a "Form I-485 application to register permanent residence or adjust status with the United States Citizenship and Immigration Services ('USCIS')." *Id.* For reasons unexplained in the record, on August 8, 2014, the IJ "administratively closed Petitioner's removal proceedings," such that the "applications Petitioner had filed remained pending and were not adjudicated." *Id.* On August 27, 2014, "Petitioner's immigration bond was cancelled," for reasons that, again, are not explained in the record. *Id.* Approximately a decade later, on July 9, 2024, USCIS "administratively closed Petitioner's Form I-485, application to register permanent residence or adjust status" and "did not grant Petitioner lawful status." *Id.*

Towards the end of that interim 10-year period, Petitioner again became entangled in the criminal justice system. On September 10, 2023, he "was charged by the Pierce County Sheriff's

Office, Pierce County, Washington, for assault in the fourth degree, domestic violence enhancement, a violation of [Washington Revised Code Section] 9A.36.041(2), and sexual misconduct with a minor, a violation of [Washington Revised Code Section] 9A.44.096(2)." *Id.* It does not appear from the record that he was convicted of either of these charges. The next year, on August 12, 2024, he "was convicted in the Pierce County District Court of reckless driving, a violation of [Washington Revised Code Section] 46.61.500, and sentenced to 364 days jail, six months suspended, and Hit/Run Unattended Vehicle, a violation of [Washington Revised Code Section] 46.52.010(2), and sentenced to nine days in jail, ninety days suspended." *Id.*

Nearly two years after his convictions for those vehicular offenses, on June 20, 2026, he was arrested by ICE in Kent, Washington, apparently due to ICE's assessment of his "arrest history and criminal convictions" and determination "that Petitioner had unlawfully entered the United States." *Id.* at 3–4. ERO transported him to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. *Id.* at 4. On July 24, 2026, Petitioner's "removal proceedings were re-calendared with the Executive Office of Immigration Review," ("EOIR"). *Id.* He was scheduled to appear before an IJ on October 26, 2026; it is unclear from the record whether this proceeding has occurred. *Id.* Petitioner "has not had a bond hearing and is not currently scheduled to appear for one." *Id.*

On September 17, 2026, Petitioner filed a pro se habeas petition. Dkt. No. 1. On October 2, 2026, Respondents[2] filed a return.[3] Dkt. No. 5. Petitioner did not file a traverse.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] Respondents also filed a declaration from ICE Deportation Officer Nhat Truong that was sworn under the penalty of perjury, Dkt. No. 6, and a declaration from Assistant U.S. Attorney Michelle Lambert, which was not, Dkt. No. 7. *See*

## II. DISCUSSION

Construing the pro se petition liberally, Petitioner raises three claims in his petition. First, he claims that the manner of his arrest violated his right to due process because the ICE officers who arrested him did so "without a warrant or cause and did not answer questions as to why they were detaining [him] or read [him his] rights." Dkt. No. 1 at 3, 5. Second, he claims that his "continued detention without a bond hearing violates the Immigration and Nationality Act and the Fifth Amendment of the Constitution." *Id.* at 5. Third, he claims that "ICE had no valid reasons to revoke [his] granted and posted bond" from 2012 and that ICE acted arbitrarily and capriciously when they re-detained him. *Id.* at 6. He requests his immediate release or, alternatively, a bond hearing "with considerations to set a reasonable bond" and at which Respondents must prove by clear and convincing evidence that his continued detention is necessary. *Id.* at 3, 6. He also requests an order prohibiting Respondents from re-detaining him without notice and a pre-deprivation hearing at which Respondents bear the burden of justifying re-detention by clear and convincing evidence. *Id.* at 6.

Respondents concede the Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and that he "is entitled to a bond redetermination hearing." Dkt. No. 5 at 4–5. Respondents also acknowledge that Petitioner stated on a Form I-286, Notice of Custody Redetermination, that "he did request immigration judge review," but they contend that he must make such a request to an Immigration Judge either in writing or orally, which he could have done at any of his three prior hearings. *Id.* at 5–6 & n.3. Respondents assert that the procedural protections of 8 U.S.C. § 1226(a) satisfy due process requirements. *Id.* at 7–8. Finally, they argue Petitioner's arrest was lawful and does not entitle him to release. *Id.* at 8–9.

---

28 U.S.C. § 1746. The Court accordingly does not consider the Lambert Declaration or the associated exhibits.

**A. Legal Standards**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner Is Entitled to a Bond Hearing**

Respondents concede that Petitioner is entitled to a bond hearing. Dkt. No. 5 at 5. Because Petitioner is a member of the bond denial class in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025), *aff'd,* 183 F.4th 1160 (9th Cir. 2026), the Court orders a bond hearing in which the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. *See, e.g., Gonzales-Villegas v. Scott*, No. 2:26-CV-02187-JHC, 2026 WL 2428291 (W.D. Wash. Aug. 19, 2026); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103 (W.D. Wash. Dec. 8, 2025).

**C. Injunctive Relief**

In addition to release or a bond hearing, Petitioner requests a permanent injunction prohibiting Respondents from re-detaining him "without notice and a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence[.]" Dkt. No. 1 at 6. Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941-42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere does Petitioner allege that re-detention is likely if he were to be released or that such detention is likely to occur without compliance with the government's regulations or policies. For these reasons, the Court denies his request for injunctive relief regarding potential future re-detention.

## III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents must provide Petitioner with a bond hearing before an immigration judge within seven days of the date of this Order unless Petitioner requests an extension of that deadline; any extensions successfully requested by Petitioner toll the seven-day period. Respondents must ensure that there is a contemporaneous record of the bond hearing.

2. At the bond hearing, Respondents shall bear the burden of proof to show by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. If the IJ abuses their discretion when applying the law to Petitioner's request for bond, Petitioner may seek relief from that violation in a subsequent habeas petition.

3. If a bond hearing is not provided within seven days of the date of this Order and Petitioner has not requested an extension of that deadline, he shall be released from ICE custody within 24 hours on appropriate conditions of supervision, taking into account his ability to pay a bond.

4. Respondents must file a Status Report with the Court either confirming that Petitioner received a bond hearing—and the results of that hearing—or otherwise confirming his release by November 6, 2026.

Dated this 29th day of October, 2026.

Lauren King
United States District Judge